IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUNE JOTUNBANE,
a/k/a JEFFREY FORTER,

    Plaintiff,

v.                                                                  No. CV 06-809 WJ/RHS

ERMA SEDILLO, et al.,

    Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Plaintiff['s] Motion for Partial Summary Judgement and Arguement and Statement of Undisputed Facts with Affidavit ("Motion"), filed February 27, 2008 **[Doc. No. 21]**. The United States Magistrate Judge, having considered the parties' submittals, the relevant authorities and being otherwise advised in the premises, finds that Plaintiff's Motion is well-taken in part and recommends that it be granted in part and denied in part.

Plaintiff, who is incarcerated and proceeding *pro se*, filed this lawsuit alleging that Defendants improperly denied various requests associated with the recognition and practice of Asatru as a religion.[1] Plaintiff claims that, in rejecting his requests, Defendants violated Plaintiff's rights to the free exercise of religion and equal protection provided by the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. (See Complaint at 2, 3). Plaintiff seeks injunctive relief and money damages.

---

[1] Plaintiff alleges that he is "a devout follower of the religion of Asatru." (New Mexico Corrections Department ("NMCD") Inmate Informal Complaint, Ex. A to Complaint).

On February 27, 2008, Plaintiff filed this motion seeking summary judgment on his claims that Defendants Moya and Sedillo violated:  (1)  his First Amendment right to free exercise of his religion and (2) his right to free exercise of his religion under the RLUIPA.  (See Motion at 15-16).  On March 31, 2008, Defendants filed a response to Plaintiff's motion.  (See Response to Plaintiff's Motion ("Response") **[Doc. No. 29]**).  Plaintiff filed two "notices," which the Court construes together as Plaintiff's reply.  (See Plaintiff[']s Notice to the Court ("Notice #1"), filed Mar. 21, 2008 **[Doc. No. 27]**; 2nd Notice to the Court ("Notice #2"), filed Apr. 3, 2008 **[Doc. No. 33]**).

*Summary Judgment*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Under Rule 56(c), the moving party "*always* bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Reed v. Bennett, 312 F.3d 1190, 1194 (10th Cir. 2002) (emphasis in original) (citation omitted).  The Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  However, in opposing a motion for summary judgment, the non-moving party must come forward with enough evidence to support a jury verdict.  Conclusory allegations will not suffice.  Diaz v. Paul J. Kennedy Law Firm, 289 F.3d 671, 675 (10th Cir. 2002).  The non-moving party may not avoid summary judgment by resting upon the mere

allegations or denials of his pleadings.  See Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  Rather, the non-movant must point to sufficient evidence in the record.  Gross v. Burggraf Construction Co., 53 F.3d 1531, 1546 (10th Cir. 1995) (citation omitted).  Unsubstantiated allegations, no matter how true they might be, cannot be considered.  Id.

*Discussion*[2]

Plaintiff contends that between April of 2004 and April of 2006, he submitted several requests for religious accommodations to the prison facility's Chaplain and/or Warden, all of which were either denied or ignored.  On April 5, 2006, Plaintiff submitted an informal complaint against Defendant Moya, stating that his previous requests and "4 written proposals . . . regarding accommodating my religious needs . . . . have gone unanswered or been denied without explanation."[3]  (Inmate Informal Complaint at 1, 2, Ex. A to Motion).  On April 13, 2006, after reviewing Plaintiff's complaint, Chaplain Andy Dimas recommended "resolution" and informed Plaintiff:  "Your file shows your religious preference as Christian Faith.  You may wish to submit in writing a request for change in religious preference."  (Id. at 1).  Chaplain Dimas also stated that "[r]equests for religious programming must be made in accordance with PNM policy requirements for specific items."  (Id.).

On April 21, 2006, Plaintiff submitted a grievance, asserting that Chaplain Dimas

---

[2]Unless otherwise noted, the factual background set forth in this discussion is based on the undisputed facts and evidentiary material provided in the parties' briefing.

[3]In his informal complaint, Plaintiff explains that he had requested the following religious accommodations: (1) religious diet, (2) hair exemption, (3) outdoor religious area, (4) runes, (5) opportunity to purchase literature, (6) ceremonial items, and (7) access to an outside religious representative.  (See Inmate Informal Complaint at 1-2).

"fail[ed] to articulate any resolution or address . . . the attached comprehensive religious request" and maintaining that "this issue is not resolved." (Inmate Grievance at 1, Ex. B to Motion). In his grievance, Plaintiff specifically requested that his file "reflect my religious belief (Asatru) and . . . [that] prison authorities and Chaplains office . . . give a clear answer item by item to the attached religious request." (Id. at 1). The Grievance Officer's "Investigation and Recommendation" consisted solely of a memorandum from Chaplain Dimas, dated April 27, 2006 ("Dimas Memo").[4] (Id. at 2). In his memo, Chaplain Dimas noted that because Plaintiff's request for a change in his religious preference to Asatru had been fulfilled, "[t]hat issue is therefore resolved." (Dimas Memo at 1). However, Chaplain Dimas also concluded that because Plaintiff elected "to go with the formal grievance process[,] *this office is unable to proceed with [Plaintiff's] requested religious programming. This item is therefore unresolved.*" (Dimas Memo at 2 (emphasis added)).

On May 11, 2006, despite Chaplain Dimas' conclusion that Plaintiff's religious requests remained "unresolved," Defendant Moya determined that Plaintiff's grievance was "resolved," explaining that the "[n]ecessary change has been made based on inmate request." (Inmate Grievance at 2, Ex. B to Motion). On May 12, 2006, Plaintiff appealed Defendant Moya's decision, asserting that "[t]he religious issues remain." (Id. at 2 (emphasis added)). On June 22, 2006, Defendant Deputy Secretary Operations Erma Sedillo denied Plaintiff's appeal, concluding that the grievance appeal "failed to provide any evidence to support [Plaintiff's]

---

[4] In addressing Plaintiff's previously submitted "4 written proposals to Warden Stanley Moya and the Chaplain's office regarding [Plaintiff's] religious programming requests . . . . [Chaplain Dimas noted that] [t]he file shows that previous request had been denied 'as policy does not allow this' by Associate Warden James Lopez." (Dimas Memo at 1, attached to Inmate Grievance, Ex. B to Motion).

claim." (Memorandum from Erma Sedillo ("Sedillo Memo"), Ex. C to Motion).[5] On August 31, 2006, Plaintiff filed his civil complaint in this Court. In his Motion, Plaintiff contends that he was "barred from practicing or observing the central tenets of his faith from April of 2004 to July 16, 2007[6] . . . as a direct result of [Defendants'] overt actions." (Motion at 9 ¶ 4).

First Amendment Claim

The United States Supreme Court recognizes that imprisonment does not automatically deprive a prisoner of important rights under the First Amendment. Turner v. Safley, 482 U.S. 78, 93 (1987). However, greater restriction of those rights is constitutionally permissible in a prison setting than elsewhere and courts owe "substantial deference to the professional judgment of prison administrators." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Accordingly, "restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to such objective." Beard v. Banks, 126 S.Ct. 2572, 2578 (2006).

In considering Plaintiff's free exercise claim under the First Amendment, this Court must determine, as a threshold matter, whether Plaintiff's belief is "sincerely held" and "religious in nature." Searles v. Dechant, 393 F.3d 1126, 1131 (10th Cir. 2004) (citing DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000)). Plaintiff contends that he faithfully practices the religion of Asatru and that his belief is sincerely held. (See Affidavit of Rune Jotunbane-aka-Jeffrey Forter at 9, Ex. F to Complaint). Plaintiff presents evidence that he has practiced Asatru since July of 1998.

---

[5]Defendant Sedillo also stated that Plaintiff's "previous request had been denied due to policy not allowing your recommendations." (Sedillo Memo).

[6]Plaintiff states that the majority of his religious services requests were eventually approved by a review committee and signed into effect by Warden Moya on July 16, 2007. (See Motion at 4 ¶ K (citing Ex. I, to Motion)).

(See exhibits attached to Notice 1 (consisting of memoranda, communication forms and grievances from the Oregon Department of Corrections concerning Plaintiff's requests for Asatru materials dated from 1998 through 2000)). While Defendants do not dispute that Plaintiff's practice of Asatru is "religious in nature," they do appear to challenge the "sincerity" of Plaintiff's belief. However, Defendants do not point to any evidence that raises a genuine issue with respect to Plaintiff's sincerity.

Defendants contend that Plaintiff's sincerity is in dispute based on the following allegations: (1) Plaintiff was classified as "Christian" when he "arrived into the care of the NMCD in 1999," (Response at 4 ¶ B); (2) In 2001, Plaintiff filed a lawsuit in New Mexico state court styled D-0101-CD-2002-2268, in which he "insisted that his self-proclaimed religious preference was Tantric Buddhism,"[7] (Response at 4 ¶ C, 5 ¶ E); and (3) Plaintiff did not take steps to change his classification from "Christian" to "Asatru" until April of 2006, (Response at 5 ¶ I). Thus, Defendants apparently argue that Plaintiff's sincere belief in "Asatru" is in dispute because, from 1999 through April of 2006, Plaintiff indicated that his religious preference was "Christian" and/or "Tantric Buddhism." However, whether or not this argument raises an issue regarding Plaintiff's sincere belief in Asatru, Defendants point to no evidence supporting their argument.

Plaintiff replies that he did not enter the NMCD until May of 2002. (Notice 2 at 1 (citing NMCD Master Record Entry (containing a photograph dated 5/1/2002 and listing Plaintiff's religion as "Asatru"))). Plaintiff further explains that he was not aware he was classified as "Christian" until "the Chaplain responded [to an informal grievance] & informed me I was listed

---

[7] Defendants do not provide a copy of the complaint or any other materials from this case in support of their allegation.

as Christian in the file."[8]  (Notice 1 at 2).  As previously noted, a 2002 NMCD Master Record Entry lists Plaintiff's religion as "Asatru."  No party alleges and no evidence indicates that Plaintiff ever requested the NMCD to list his religion as anything other than "Asatru."  The record indicates that Plaintiff's only request regarding his religious classification was that his file reflect his religious belief (Asatru) following Chaplain Dimas' statement that the file listed Plaintiff as Christian.

   Plaintiff also contends that he "is not and never has been involved in any litigation regarding 'Tantric Buddhism,' and vehemently denies" Defendants' allegation to the contrary.  (Notice 1 at 1 (emphasis in original)).  The Court utilized the New Mexico Courts "Case Lookup" system in an unsuccessful attempt to locate the case that Defendants cite as evidence of Plaintiff's belief in "Tantric Buddhism."  Each attempt to conduct a case number search using the case number provided by Defendants generated the following message:  "No results found.  Please try different search criteria."  On its own initiative, the Court conducted name searches in the New Mexico "Case Lookup" system using "Forter" and "Jotunbane," and was unable to find any cases involving this Plaintiff that were filed in 2001.  Indeed, the Court was unable to locate any New Mexico state case involving this Plaintiff that was filed prior to the filing of this lawsuit.  The Court located three cases involving "Jeffrey Forter;" however, each of these cases

---

[8]Defendants point to no evidence whatsoever in support of their allegation that Plaintiff entered the NMCD in 1999 and was classified as "Christian" at that time.  Indeed, the NMCD Master Record Entry of 2002, listing Plaintiff's religion as "Asatru," appears to contradict such an allegation.  The only evidence that Plaintiff was ever classified as "Christian" by the NMCD is a statement by Chaplain Dimas to Plaintiff on 4-13-06: "Your file shows your religious preference as Christian Faith."  (NMCD Inmate Informal Complaint, Ex. A, to Motion).  Approximately one week following Chaplain Dimas' statement, Plaintiff submitted a grievance requesting that the file "reflect my religious belief (Asatru)."  (Inmate Grievance, Ex. B, to Motion).

was filed in 2007 or 2008.[9] Having considered the parties' argument and evidence, the Court finds that no material issue of fact is in dispute regarding the sincerity of Plaintiff's beliefs. Accordingly, the Court recommends that an order be entered specifying that the sincerity of Plaintiff's belief in Asatru be treated as an established fact.

Finally, while Plaintiff moves for summary judgment on his claims under both the First Amendment and the RLUIPA, with the exception of the sincerity of Plaintiff's belief, the parties' briefing focuses almost exclusively on Plaintiff's claim under the RLUIPA.[10] Thus, the Court recommends that Plaintiff's motion for summary judgment with respect to his First Amendment claims be denied without prejudice at this time.

RLUIPA Claim

Section 3 of the RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person . . . confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

§ 2000cc-1(a).  Under the RLUIPA, Plaintiff bears the burden of showing that the activity at

---

[9] Defendants' counsel is cautioned that a lawyer violates his duty of candor toward the Court if he knowingly "make[s] a false statement of material fact," or offers false evidence to a tribunal, or fails to "take reasonable remedial measures" upon learning that he has offered false material evidence to a tribunal.  N.M.R.A. 16-303(A)(1), (4).  This Court has adopted the New Mexico Rules of Professional Conduct.  See D.N.M.LR-Civ. 83.9.

[10] For example, the parties do not mention or discuss the four Turner factors, that must be analyzed in order to determine the reasonableness of a particular regulation or denial at issue. See Beard, 126 S.Ct. at 2578; O'Lone v. Estate of Shabazz, 482 U.S. 342, 350-53 (1987).

issue is a religious exercise,[11] and that Defendants have substantially burdened that exercise. § 2000cc-1. The burden then shifts to the government to show that the government action is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. § 2000cc-2(b). The RLUIPA is to be construed broadly to favor protection of religious exercise. § 2000cc-3(g).

As previously noted, Defendants do not dispute that the activities at issue are religious exercises associated with Asatru. However, Defendants contend that "Plaintiff has failed to prove any action by the Defendant's [sic] has created a 'substantial burden' upon his exercise of his truly held belief." (Response at 3). Plaintiff attached to his Motion an Affidavit and article "detail[ing] the history, philosophy and central tenets of the Asatru faith and . . . to demonstrate Plaintiff has met the burden of proving he has suffered a 'substantial burden' on his right to the free exercise of his religion." (Affidavit at 2, Ex. #1 to Motion **[Doc. No. 21-3]**). Plaintiff asserts that Defendants substantially burdened the exercise of his religion because in "den[ying] all tenets of the Asatru faith from being practiced . . . . [Defendants] in effect bann[ed] the Asatru religion." (Motion at 14 (emphasis in original)). Defendants neither dispute Plaintiff's description of the beliefs and practices of Asatru, nor disagree that Plaintiff's multiple requests related to these beliefs and practices were repeatedly denied and/or ignored. Indeed, Defendants' Response specifically controverts very few of Plaintiff's alleged facts.[12] Accordingly, the Court concludes that Plaintiff has met his burden of showing that Defendants

---

[11]"Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).

[12]"All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted." D.N.M.LR-Civ. 56.1(b).

imposed a substantial burden on the exercise of his religion. Having substantially burdened Plaintiff's religious exercise, Defendants must show that the burden imposed was in furtherance of a compelling governmental interest and was the least restrictive means of furthering that interest.

Defendants assert that "issues of material fact remain[] as to whether . . . compelling governmental interests [were] implemented in the least restrictive means." (Response at 3). However, the Court finds that Defendants wholly fail to meet their burden of showing *either*: (1) that Plaintiff's religious exercise was burdened pursuant to a compelling government interest, or (2) that the burden imposed was the least restrictive means of furthering that interest.

In their Response, Defendants allude to concerns regarding safety, security and budgetary constraints. However, the only evidence Defendants point to as support for these interests is a memorandum from Chaplain Dimas, dated June 26, 2007, in which he recommends that certain "Group Worship ceremonial items" be approved and housed in a designated area "subject to . . . security concerns." (Memorandum from Chaplain Dimas, dated Jun. 26, 2007 at 2 ("Dimas Memo 2"), Ex. I to Motion). The Dimas Memo 2 provides no evidence of a compelling governmental interest justifying the denial of all of Plaintiff's religious requests beginning in 2004, up to and through, the denial of Plaintiff's grievance appeal. At most, the Dimas Memo 2 suggests a security concern regarding certain "Group Worship ceremonial items." However, it is not evidence of a similar concern regarding Plaintiff's other requests, such as religious diet, outdoor worship, access to religious representatives, and availability of religious literature.

Defendants do not allege, much less point to any evidence showing that, in denying all of Plaintiff's religious requests, the burden imposed on Plaintiff's religious exercise was the least restrictive means of furthering a compelling governmental interest. Indeed, the Dimas Memo 2,

approved by Defendant Moya on July 17, 2007, tends to show that a blanket denial of Plaintiff's religious requests was not the least restrictive means of furthering such interests. For the reasons set forth above, the Court finds that Defendants fail to meet their burden under the RLUIPA of showing that the burden imposed on Plaintiff's religious exercise was the least restrictive means of furthering a compelling governmental interest. Accordingly, the Court recommends that Plaintiff's Motion be granted with respect to his claim pursuant to the RLUIPA.

## Conclusion

The Court recommends that "Plaintiff['s] Motion for Partial Summary Judgement and Arguement and Statement of Undisputed Facts with Affidavit" **[Doc. No. 21]** be **granted in part** and **denied in part** as follows:

(1)  the sincerity of Plaintiff's belief in Asatru should be treated as an established fact;

(2)  Plaintiff's motion for summary judgment with respect to his First Amendment claim should be **denied without prejudice** at this time; and

(3)  Plaintiff's motion for summary judgment should be **granted** against Defendants Moya and Sedillo for violating Plaintiff's right under the RLUIPA to religious exercise.

Pursuant to 28 U.S.C. § 636(b)(1), any party may serve and file written objections within ten (10) days after being served with a copy of these proposed findings and recommendations. A party must file any objections within ten (10) days if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

*Robert Hayes Scott*
_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE