**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

RUNE JOTUNBANE,
a/k/a JEFFREY FORTER,

      Plaintiff,

v.                                               No. CIV 06-809 JB/RHS

ERMA SEDILLO, ELMER BUSTOS,
and STANLEY MOYA,

      Defendants.

**MEMORANDUM OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION REGARDING PLAINTIFF'S RLUIPA CLAIMS**

**THIS MATTER** comes before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition Regarding Plaintiff's RLUIPA Claims, filed February 17, 2010 (Doc. 65)("PF&RD"). Plaintiff Rune Jotunbane, a/k/a Jeffrey Forter, filed objections to the PF&RD. See Plaintiff's Objections to PF&RD, filed March 15, 2010 (Doc. 71)("Objections"). The primary issues are: (i) whether a plaintiff may maintain claims against defendants under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc through 2000cc-5 ("RLUIPA") in their individual capacities; and (ii) whether a plaintiff may secure money damages under RLUIPA. Having considered the parties' submissions and relevant authorities, and having made a de novo determination of those portions of the Magistrate Judge's PF&RD to which Plaintiff Rune Jotunbane objected, the Court will adopt the Magistrate Judge's PF&RD.

**PROCEDURAL BACKGROUND**

Jotunbane makes two objections to the Magistrate Judge's PF&RD, but makes the same arguments in support of both. He objects to both the Magistrate Judge's proposals to: (i) dismiss

his RLUIPA claims against the Defendants in their individual capacity; and (ii) dismiss his RLUIPA claims against the Defendants for money damages. See Objections at 1-2. In both cases, he argues that RLUIPA was intended "to increase protection of religious rights of prisoners," Objections at 2 (emphasis in original), and, because a claim under 42 U.S.C. § 1983 allows for individual liability and money damages, it is illogical that these claims and remedies would not be available under RLUIPA. He also argues that the cases the Magistrate Judge cited were distinguishable because the conduct alleged in those cases was less egregious than the conduct in this case, which Jotunbane describes as "a total and complete ban of an entire religion." Objections at 2.

The Defendants responded to the objections. See Response to Plaintiff's Objections to Magistrate Judges [sic] Proposed Findings and Recommendations/Disposition on R.L.U.I.P.A. Claims, filed March 25, 2010 (Doc. 73)("Response"). The Defendants assert only that Jotunbane's objections were untimely, however, and otherwise fail to respond to the substance of the objections. See Response ¶¶ 1-6, at 1-2. On March 2, 2010, however, the Magistrate Judge granted Jotunbane an additional 14 days to object to the PF&RD because the first copy of the PF&RD that Jotunbane received was incomplete. See Order Granting Plaintiff's Request for Document and Extending the Time in Which to File Objections, filed March 2, 2010 (Doc. 67).[1] That extended Jotunbane's time

---

[1] Jotunbane sent the Magistrate Judge a letter, dated February 22, 2010 -- five days after the Magistrate Judge issued its PF&RD -- requesting a complete copy of the PF&RD and additional time in which to file his objections. See Letter from Jotunbane to the Magistrate Judge (dated Feb. 22, 2010), filed February 26, 2010 (Doc. 66)("Could you please re-mail Document #65 to me and notify the court, so as to adjust the required response date."). It appears that the Magistrate Judge considered this letter to be a request for extension of time under rule 6 of the Federal Rules of Civil Procedure and found that the fact that Jotunbane received an incomplete copy of the PF&RD constituted "good cause" warranting an extension. The Court has found no rule or other authority indicating that a rule-6 extension is unavailable in the context of filing objections to a PF&RD, and the Supreme Court of the United States has implied that the availability of such extensions is required when the applicable Court of Appeals has adopted a rule barring appellate review in the absence of objections to the Magistrate Judge's recommendations. The Supreme Court stated:

to file objections to March 16, 2010.  His objections arrived at the Court and were filed on March 15, 2010, making them timely.

## **RELEVANT LAW OF RLUIPA**

Section 3 of RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person --
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  "A person may assert a violation of this chapter as a claim . . . in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).  The term "government" is defined as: "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) a branch, department, agency, instrumentality, or official of an entity listed in clause; and (iii) any other person acting under color of State law." Id. at § 2000cc-5.  Congress appeared to pass RLUIPA section at issue in this case -- section 3, 42 U.S.C. § 2000cc-1 -- pursuant to its Commerce-Clause and Spending-Clause powers.  See Cutter v. Wilkinson, 544 U.S.

---

> [A] court of appeals may adopt a rule conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections with the district court identifying those issues on which further review is desired.  Such a rule, at least when it incorporates clear notice to the litigants and an opportunity to seek an extension of time for filing objections, is a valid exercise of the supervisory power that does not violate either the Federal Magistrates Act or the Constitution.

Thomas v. Arn, 474 U.S. 140, 155 (1985)(emphasis added). See Rounds v. Corbin, 236 Fed. Appx. 402, 403-04 (10th Cir. 2007)(upholding a district judge's denial of a request for an extension, implying that, under some circumstances, a grant of such a request would be appropriate); Nash v. Black, 781 F.3d 665 (8th Cir. 1986)(quoting Thomas v. Arn).

709, 715-16 (2005); U.S. Const. art. I, § 8; 42 U.S.C. § 2000cc-1 ("This section applies in any case in which . . . (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.").

In this case, there are no allegations or other facts that indicate that the "substantial burden affects . . . commerce with foreign nations, among the several States, or with Indian tribes," so the Court deals only with RLUIPA's Spending-Clause underpinnings.[2] RLUIPA "[s]ection 3 [42 U.S.C. § 2000cc-2(a)] applies when the substantial burden on religious exercise is imposed in a program or activity that receives federal financial assistance." Cutter v. Wilkinson, 544 U.S. at 716 (alterations and internal quotations omitted). See Smith v. Allen, 502 F.3d 1255, 1272-73 (11th Cir. 2007). It turns out that, in this case, the source of Congress's constitutional authority for passing the statute dictates whether a claim under RLUIPA may be brought against an individual defendant, and whether it may be brought for money damages against a defendant in its official capacity. While the statute provides alternative bases for Congressional power to pass the statute -- a section grounding applicability of the statute on Congress's Spending Power and another grounding the

---

[2] That Jotunbane's RLUIPA claims are premised on the fact that the prison in which he was incarcerated receives federal funds -- i.e., that it rests on a constitutional Spending-Clause basis -- appears to be an assumption that the Magistrate Judge made, as Jotunbane's Complaint fails to state facts that would indicate which basis of Congressional Power -- i.e., which subsection of 42 U.S.C. § 2000cc-1 -- he sought to invoke. Neither side has objected to the Magistrate Judge's apparent assumption that the New Mexico Department of Corrections "receives Federal financial assistance," which would enable Jotunbane to pursue claims under 42 U.S.C. § 2000cc-1(b)(1). The Magistrate Judge did not find, however, that the "substantial burden" about which Jotunbane complains "affects . . . commerce with foreign nations, among the several States, or with Indian tribes," which would be necessary for him to pursue a claim under 42 U.S.C. § 2000cc-1(b)(2). Jotunbane has not argued that the burden affects commerce. Given that no party objected to the Magistrate Judge's apparent assumption that Jotunbane's RLUIPA claim rested on the statute's Spending-Clause underpinnings, the Court will not disturb that assumption.

4

statute on Congress's Commerce Power -- the only basis that is applicable in this instance is the Spending-Power basis, i.e., that Jotunbane's prison received federal funds and therefore subjected itself to claims under RLUIPA.

### 1. Claims for Monetary Damages under RLUIPA.

A recent case from the United States Court of Appeal for the Eighth Circuit articulated why RLUIPA does not authorize claims for money damages against states or against state officials in their official capacity.[3] The Eighth Circuit began with an analysis whether RLUIPA satisfied the requirements for a constitutional use of Congress' power under the Spending Clause of Article I and found that Congress had constitutionally exercised its Spending-Clause power. See Van Wyhe v. Reisch, 581 F.3d 639, 652 (8th Cir. 2009). The Eighth Circuit thus concluded that RLUIPA properly created a claim for some relief, allowable based on the state's acceptance of federal funds. The Eighth Circuit then analyzed the separate question whether the combination of the state's acceptance of federal prison funding and the provisions of RLUIPA were sufficient to constitute a waiver of Eleventh-Amendment immunity, thereby allowing a citizen to bring a claim for monetary relief against the state or a state official in his or her official capacity. See 581 F.3d at 652-53.

> There can be no constructive waiver of sovereign immunity, and we "indulge every reasonable presumption against waiver." Coll. Sav. Bank[ v. Fla. Prepaid Postsecondary Educ. Expense Bd.], 527 U.S. [666,] 682 [(1999)] (internal marks omitted). The Supreme Court, construing the federal government's waiver of sovereign immunity, has stated that "[t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." Lane v. Pena, 518 U.S. 187, 192 . . . (1996) (citing United States v. Nordic Village, Inc., 503 U.S. 30, 34 . . . (1992)).

---

[3] Claims against state officials in their official capacity are, for Eleventh-Amendment-immunity purposes, the same as claims against the state. See Sain v. Snyder, No. CIV 08-1019 JB/LFG, 2009 WL 1312954, at *3 (D.N.M. Apr. 2, 2009)(Browning, J.)("An 'official capacity' claim is the equivalent of a claim against the state . . . .")(citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)).

> Additionally, waivers are to be "construed strictly in favor of the sovereign and not enlarged beyond what the language requires." See Nordic Village, Inc., 503 U.S. at 34 . . . (internal marks and citations omitted).
>
> RLUIPA conditions the state's acceptance of federal funds, in part, on its consent to suit for "appropriate relief." 42 U.S.C. § 2000cc-2(a). As we concluded above, this phrase plainly creates a private cause of action against the state "for at least some form of relief." Madison[ v. Virginia], 474 F.3d [118,] 130 [(2006)]. The phrase, "appropriate relief," is broad enough to include both injunctive relief and compensatory damages, but the question is whether the language *unambiguously* extends to monetary claims.

Van Wyhe v. Reisch, 581 F.3d at 653 (emphasis in original). The Eighth Circuit then pointed to a circuit split in which the United States Court of Appeals for the Fourth, Fifth, Sixth, Seventh, and District of Columbia Circuits had held that the language contained in RLUIPA fails to put the states adequately on notice that acceptance of federal prison funds might subject the state to suits for money damages and therefore falls short of an unambiguous waiver of Eleventh-Amendment immunity. See Holley v. Calif. Dep't of Corr., -- F.3d ----, ----, 2010 WL 1268197, at *2-3 (9th Cir. Apr. 5, 2010)("We join five of the six circuits to have considered this question in holding that RLUIPA's appropriate relief language does not unambiguously encompass monetary damages so as to effect a waiver of sovereign immunity from suit for monetary claims . . . .")(quoting Van Wyhe v. Reisch, 581 F.3d at 654); Van Wyhe v. Reisch, 581 F.3d at 653 (citing Madison v. Virginia, 474 F.3d at 130 ("We conclude that RLUIPA's 'appropriate relief against a government' language falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages."); Sossamon v Lone Star State of Texas, 560 F.3d 316, 331 (5th Cir. 2009)("RLUIPA is clear enough to create a right for damages on the cause-of-action analysis, but not clear enough to do so in a manner that abrogates state sovereign immunity from suits for monetary relief."); Cardinal v. Metrish, 564 F.3d 794, 801 (6th Cir. 2009)("Here, RLUIPA does not contain a clear indication that Congress unambiguously conditioned receipt of federal prison funds on a State's consent to suit

for monetary damages."); Nelson v. Miller, 570 F.3d 868, 884 (7th Cir. 2009)("The term 'appropriate relief' is open to several interpretations and does not provide the 'unequivocal textual expression' necessary to effect a sovereign's waiver to suits for damages."); Webman v. Fed. Bureau of Prisons, 441 F.3d 1022, 1025-26 (D.C. Cir. 2006)(referring to a prior statute with similar language and holding that, "[o]n its face, RFRA's reference to 'appropriate relief' is not the 'sort of unequivocal waiver that our precedents demand,' . . . because that broad term is susceptible to more than one interpretation."). The Eighth Circuit noted that the United States Court of Appeals for the Eleventh Circuit's opinion in Smith v. Allen came to a contrary conclusion, but was able to distinguish the Supreme Court's precedent upon which the Eleventh Circuit relied, Franklin v. Gwinnett County Public Schools, 503 U.S. 60 (1992). See Van Wyhe v. Reisch, 581 F.3d at 653-54. The Eighth Circuit noted:

> In Franklin, . . . the Supreme Court was dealing with an implied cause of action for intentional discrimination and had no occasion to discuss whether any statutory language was specific enough to effectuate a knowing waiver of state sovereign immunity by its acceptance of the federal benefit. Franklin did not involve a question of state sovereign immunity.

Van Wyhe v. Reisch, 581 F.3d at 653-54. The Court agrees with the Eighth Circuit's analysis of the issue and agrees that RLUIPA does not transform a state's acceptance of federal prison funding into a waiver of its Eleventh-Amendment immunity from suits for money damages.

### 2. Claims Against Individuals under RLUIPA.

The language of RLUIPA is not clear whether a claim may be brought against a defendant in his or her individual, as opposed to official, capacity. An inmate may bring an RLUIPA claim against "a government," which the statute defines to include "any . . . person acting under color of state law," which appears to be very broad -- so broad that it might include government officials in their individual capacities. On the other hand, several courts have held that it cannot be so broadly

construed. As the Magistrate Judge pointed out, the three circuits that have directly addressed the question have found that an RLUIPA plaintiff cannot bring suit against an official in his or her individual capacity. See Nelson v. Miller, 570 F.3d at 889 ("[A]s a matter of statutory interpretation, and to avoid the constitutional concerns that an alternative reading would entail, we decline to read RLUIPA as allowing damages against defendants in their individual capacities."); Sossamon v. Lone Star State of Texas, 560 F.3d at 328-29 ("Congressional enactments pursuant to the Spending Clause do not themselves impose direct liability on a non-party to the contract between the state and the federal government."); Smith v. Allen, 502 F.3d at 1272-73 ("Our court, in addressing other federal statutes that emanate directly from Congress' Spending Power . . . has repeatedly held that Congress cannot use its Spending Power to subject a non-recipient of federal funds, including a state official acting his or her individual capacity, to private liability for monetary damages."). Smith v. Allen and the other cases cited have found:

> the courts have consistently recognized the limited reach of Congress' Spending Power legislation, concluding that statutes passed under the Spending Clause may, as a condition of funding, subject the grant *recipient* to liability in a private cause of action, but that the Spending Power cannot be used to subject individual defendants, such as state employees, to individual liability in a private cause of action.

502 F.3d at 1274 (emphasis in original)(citing Hartley v. Parnell, 193 F.3d 1263, 1270 (11th Cir. 1999), Rosa H. v. San Elizario Indep. Sch. Dist., 106 F.3d 648, 654 (5th Cir. 1997), and Jennings v. Univ. of N.C. at Chapel Hill, 444 F.3d 255, 268 n.9 (4th Cir. 2006)).[4] See Bell v. Bd. of Educ.

---

[4] Ahmad v. Furlong, 435 F.3d 1196 (10th Cir. 2006), might be interpreted as implying that suits against individuals are available under RLUIPA, because, in that case, the Tenth Circuit analyzed the defendants' defense of qualified immunity, a defense that would be unnecessary if the plaintiff were not authorized to bring suits against the defendants in their individual capacities. See 435 F.3d at 1197-98. On the other hand, the Tenth Circuit did not address the viability of suits against individuals under RLUIPA at all, implying that the parties simply did not raise the issue. See Gary R. Rom, RLUIPA and Prisoner's Rights: Vindicating Liberty of Conscience for the Condemned by Targeting a State's Bottom Line, 44 Val. Univ. L. Rev. 283, 309-11 & n.91 (Fall

of Albuquerque Pub. Schs., 652 F. Supp. 2d 1211, 1212-17 (D.N.M. 2008)(Browning, J.)(discussing the Supreme Court's analogy of Spending-Clause legislation to a contract between the federal and state governments, and finding that mental-anguish damages were not available based on violations of Title VI or § 504 of the Rehabilitation Act). The Court is persuaded by the analysis of these other circuits. The individual Defendants in this action are not the recipients of federal funds and therefore cannot be subject to individual liability based upon such receipt by their employer. The Court thus concludes, as did the Magistrate Judge, that RLUIPA does not provide for suits against Defendants in their individual capacity. This does not mean that inmate's are without any recourse for violations of their free-exercise rights; rather, their right to suit is limited to suits against the state or state officials in their official capacity.

## ANALYSIS

With respect to the Magistrate Judge's dismissal of both his claims for money damages and his claims against the Defendants in their individual capacities, Jotunbane makes two arguments. First, he argues that it does not make sense that RLUIPA would not provide actions for money damages and would not provide actions against government officials in their individual capacities because RLUIPA was intended to increase the availability of remedies to inmates whose right to exercise their religion is being infringed, and 42 U.S.C. § 1983 already provides inmates a right of action for money damages and against defendants in their individual capacities. His argument is that, if 42 U.S.C. § 1983 provides these remedies and claims, it does not make sense that RLUIPA does not provide them and yet increases the availability of remedies. The answer to this question

---

2009)(citing early cases allowing individual-capacity suits, but stating that "[t]he Eleventh Circuit . . . uncovered a flaw in [the] logic [of those cases], holding that Congress cannot subject a non-recipient of federal funds to private liability of monetary damages.")(citing Smith v. Allen, 502 F.3d at 1272-75, and numerous other cases agreeing with its reasoning).

is that RLUIPA increases the burden upon the governmental entity to show that it is doing its best not to infringe upon the religious rights of the inmates. To avoid liability under 42 U.S.C. § 1983 for violation of the inmate's First-Amendment right to free exercise of religion, so long as it is "both neutral and generally applicable," the government must prove only that the challenged practices is "rationally related to a legitimate governmental interest." Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 649 (10th Cir. 2006)("[A] law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional challenge.").[5] To avoid liability under RLUIPA, on the other hand, the government must always prove that the conduct was the least restrictive means of furthering a compelling governmental interest, "even if the burden results from a rule of general applicability." 42 U.S.C. § 2000cc-1(a). The latter burden is more onerous, meaning that inmate-plaintiffs will, in theory, be successful significantly more often under RLUIPA.

Jotunbane's second argument underlying his objections is that the case law cited by the Magistrate Judge is factually distinguishable from this case, in that, in this case, the conduct was more egregious. Jotunbane describes the Defendants' conduct as "a total and complete ban of an entire religion." Objections at 2. The Court rejects this argument as well. The level of egregiousness of the conduct, even assuming the truth of Jotunbane's allegations, has no bearing on whether, procedurally, RLUIPA creates a cause of action against the Defendants in their individual capacity or whether it allows for the recovery of money damages against the Defendants in any

---

[5] "On the other hand, if a law that burdens a religious practice is not neutral or generally applicable, it is subject to strict scrutiny, and the burden on religious conduct violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling governmental interest." Grace United Methodist Church v. City of Cheyenne, 451 F.3d at 649 (citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546 (1993)).

capacity.  The Court finds that the Magistrate Judge's PF&RD is correct and adopts it.  The Court overrules Jotunbane's objections thereto.

**IT IS ORDERED** that: (i) the Court adopts the Magistrate Judge's Proposed Findings and Recommended Disposition; (ii) Plaintiff Rune Jotunbane's claims against the Defendants in their individual capacities under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc through 2000cc-5 ("RLUIPA"), are dismissed with prejudice; (iii) Jotunbane's claims for injunctive relief under RLUIPA are dismissed as moot; and (iv) Jotunbane's claims for monetary damages under RLUIPA are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Rune Jotunbane
Oregon State Penitentiary
Salem, Oregon

    *Plaintiff pro se*

George F. Heidke , Jr.
  General Counsel
Carlos Elizondo
  Deputy General Counsel
New Mexico Department of Corrections
Santa Fe, New Mexico

    *Attorneys for the Defendants*